We convene this afternoon to hear oral argument in two cases. The first one is case number 24-2633, United States of America v. Joshua Reichenbach. I ask counsel for appellant to please come and introduce yourself and let us know how much time you're reserving for rebuttal. May it please the court, my name is Stephen Becker and I represent the appellant Joshua Reichenbach. With permission of the court, I would like to reserve three minutes for rebuttal. Yes, that's granted. This is an appeal of the district court's denial of our motion to dismiss based on Reichenbach's as applied challenge to the constitutionality of section 922 G1 of title 18, commonly known as the felon in possession statute, which allegedly stripped him of his right to possess a firearm. But as Judge Roth noted in her concurring opinion in range, and I'm quoting now, founding era felons regained their rights to possess firearms when or if they completed their sentence. And Judge Pipps in the same case range in his concurring opinion wrote, once a citizen repays his debt to society, a legislative restriction on the right to keep and bear arms based on nothing more than a prior conviction is without relevant historical antecedent. And in the opinion of the court, Judge Hardiman wrote, the government has not cited a single statute or case that precludes a convict who has served his sentence from purchasing the same type of object that he used to commit a crime, nor has the government cited forfeiture cases in which the convict was prevented from regaining his possession, including firearms. If somebody could regain a firearm when it was used in the offense, then certainly Mr. Reichenbach, where there's no evidence or even allegation that he used the firearm in any of the predicate offenses, should be able to regain his Second Amendment rights for the firearm. Since at the time of Reichenbach's, Reichenbach possessed the firearm at issue, he was not serving any sentence, imprisonment, parole, supervised release, or otherwise, Section 922 G1's burden on the Second Amendment was not relevantly similar to the founding era burden, and was thus a violation of his rights under the Second Amendment. Do we have to go back and make an individualized review of Mr. Reichenbach's record to see if there is a possibility of violence in his past that would have a reflection on his right to have a gun? I think that's not necessary. I think the government hasn't even alleged in this case that there was any use of firearms, either in the district court or in the briefs to this court. I think the government has relied on the fact that it wants all felons to be subject to 922 G1. But in Pizzolittis, we said that under the Second Amendment, the government can restrict gun possession to check demonstrated threats of physical violence. If we were to find that this categorically is that type of crime, then would that be the end of our inquiry? If this was a violent crime, I'm not sure it would be. I don't believe it would be. Not sure what would be? If it were a violent crime, you're not sure it would be the end of the inquiry? The end of this case, right. Yes. Because Mr. Reichenbach has still served all his time, and he's not on any kind of supervision. I mean, it is interesting when a state incarcerates someone, they do so for many reasons. And some of those reasons include keeping the rest of society safe from that person. But then when they release that person, they've released them back into society. And so it's hard to say that the release of that person shows this threat of physical violence. If it existed, it would be unusual to release the person. So, you know, it strikes me that at one level, you know, maybe, you know, the consequence of your argument is that a lot of 922 G1 is unconstitutional, including as applied to your client. So, I mean, you're arguing only on behalf of your client, but the position that you take is going to carve out a ton of 922 G1 and its underlying constitutionality. Yes, I would argue, Your Honor, that I didn't carve that out, that the founders carved that out. I mean, this is not just a statute that you're looking at by itself. It's against the Second Amendment. And, of course, the Supreme Court has said that we need something that's relevantly similar to what the founding era was. And in the founding era, they didn't do that. Maybe they should have, but they didn't concern themselves with what would happen if somebody was released from prison. They didn't have supervision in those days. They didn't have parole that late 19th century. I don't I don't know what the maximum would have been. I mean, we only know what the maximum constitutional boundaries might be from what they did back in the 1890s. I'm sorry, the 1790s. So, I don't know if they exercised the limit of what they thought their constitutional boundaries were. So, you're bringing as applied challenge. And so, at one level, you're not bringing a facial challenge, which means that there have to be some constitutional applications of 922 G1, at least based on the bounds of your argument. What sort of evidence do you think would have had the government would have had to come forward with in order to apply 922 G1 to your client? Probably they'd have to show that, A, the statute applied. He's a felon and all this other stuff. But for it to constitution applied at him, would they have to show some residual lingering violence? Could it be new events of violence? What exactly would that record look like in your view? I don't know, because luckily my client didn't have those things, but I think they would have they would have to show that it was relevantly similar to something in the founding era that both the amount the how that that is, what is the burden on the Second Amendment and why they're doing it? They would have to show a similarity. I don't know what they would have done to argue that. And I mean, I'm not trying. I'm sorry. No, but but I mean, even if they showed that, wouldn't it have to somehow be tied to your client presently? Because 922 G1 is a is a perpetual disarmament. Once he qualifies, he could be 60 years old, 70 years old, 80 years old and may not be maybe a very different human being at that point in time. But 922 G1 would still, by virtue of his prior convictions, and he has a pretty high criminal history score. He does. It doesn't get much higher than than I don't think it does get higher than his criminal history score. But he would he might be able to argue he's a different person then. But what should we make of the fact that we're closer in time to that high criminal history score that your client has? I don't think from a constitutional point of view that that's relevant, Your Honor. I think from a practical point of view, and maybe if the founding fathers had changed the Second Amendment, that's a different story. But I don't think it matters whether he's been not under any kind of supervision for six months or for six years or for 16 years. Well, assume that drug dealing or the possessions with intent to distribute crimes are just for sake of the hypothetical, that they do demonstrate a special danger of firearm misuse as posed by the threat of physical violence and sort of a Rahimi slash pizzolatus framework. Wouldn't it then be relevant? It seems pizzolatus suggests, and if you look at Williams, they seem to suggest, I guess I'm curious about a couple of things. They seem to suggest at that point, then individual criminal history and what the petitioner or defendant have been up to are now relevant. And it all it also seems to then shift the burden to that petitioner or defendant once the government has shown some sort of historical analog, which we're assuming for purposes of this hypothetical. Is there a burden shifting framework like that? Is there a burden shifting framework? Oh, actually. Pizzolatus certainly did imply that they should go back and bring the district court to see if there was any danger involved. I don't know that they put in whether they said whose burden it was. And how do you read it? I'm sorry. And how do you read that? I would think it would be the government's burden. They're trying to prove that an application of a law applies. And I'm not even sure that that's the correct application. But since it's their burden to prove it. In Pizzolatus, we said violent felonies can encompass convictions that do not necessarily have as an element the use of physical violence, which is what you're arguing here. Drug dealing seems to be a poster child for that principle in case law. If you're looking at other cases that examine that proposition, why shouldn't we adopt that reasoning here? That any drug offense is a predicate automatically is violent and therefore should come under 922 G1. Right. That it should be considered. Yeah, go ahead. Yeah, I think I think for several reasons. First of all, most drug most drug distribution cases, most drug cases are not violent. I think that the United States Sentencing Commission has some statistics on that. And I think federally, the percentage of cases that are actually violent is like 30 percent or less. And then if you look at the fact that the federal. And when you say that, you're speaking specifically about drug cases. You're speaking specifically about drug cases, 30 percent or less. Yeah. And then those that the federal government usually takes over the most serious drug cases. If you look at all drug cases, including state cases, I think the percentage is much less that involve violence. And of course, in Mr. Rockenbach's case, all his drug cases were for relatively small amounts. He comes from a rural county, Northumberland County in central Pennsylvania. There was no allegation ever of violence or threats or firearm. And there was no suggestion that he was involved in anything other than dealing small amounts of illegal drugs, to be sure. And there was no gang related activity. So I think it would be much too much to say that all drug cases are therefore dangerous or violent and therefore subject to 922 G1's lifetime prohibition of firearm possession. And I just want to understand how you conceive of that sentence in Pizzolittis, that violent felonies don't necessarily always involve the actual use of violence. So if drug dealing is always dependent on the individual facts of each conviction, which you seem to be positing here, would burglary fit into that category of a violent felony where violence isn't necessarily used? I think it would depend on the facts of the case. It could depend on the facts of the case. I think burglary I think is considered more of a violent crime than drug offenses, I believe. It's just if it's always fact based, it seems like that sentence is meaningless. If it's always individual to each person's conviction, then it seems like that sentence is meaningless. I would also point out that this court in Moore said something that strongly implies that Reichenbach should get his Second Amendment rights back. They said, taken together the early American forfeiture laws, which required forfeiting property in general and arms in particular, likewise yield the principle that a convict may be disarmed while he completes his sentence and reintegrates into society. And this principle justifies applying 922G1 to Moore. He was still on supervised release when he did it. Reichenbach was not on any kind of supervised release. So this would imply that he should not be barred from firearms. I'm sorry. Oh, no. Your time. We will. We'll hear from you on. Thank you. Good afternoon. May it please the court. Patrick Bannon on behalf of the United States. I'd like to start with Pizzolatti's because I think Pizzolatti's made some key points that refute the arguments that Mr. Reichenbach made. Starting first with the fact that Rahimi and Range II, as the court said, at a minimum, show that disarmament is justified for dangerous felons, which the court pointed to special danger of misusing firearms. And I think the second point that the court made explicit is that drug trafficking, though potentially nonviolent, is dangerous because it leads to violence. And I point the court to the White case, which, although nonpublished, found that that principle applied in a criminal challenge to the Second Amendment, similar to this one here, where felony convictions for drug trafficking would pose a special danger to others, if armed because those activities could lead to violent confrontation. So those issues have been addressed by this court in Pizzolatti's and also in the White case. And I think the third point is that the court in Pizzolatti's specifically said that the crime of conviction or the predicate felony conviction should not be the only thing that's looked at. It's a full criminal history analysis, and even post-conviction conduct can be looked at in determining dangerousness. So I think Mr. Reichenbach... And from your colleague here, it seems like in Pizzolatti's and in Williams, which Pizzolatti's sort of tracks, that there could be just a categorical type of violent crime where the government meets its burden, and then it is constitutional as applied to someone with that type of conviction. And yet, someone could still have the opportunity to say, notwithstanding my conviction, which establishes I'm a special danger of misuse, I could still be rearmed because of my entire history, and at which point the burden may or may not shift. Or it could be sort of every time we have a case that may or may not be Category 2 or 3, as Williams sort of puts it into buckets. It's the government's burden, and it's individual as to each conviction and each defendant every single time. So what is the test under Pizzolatti's? Well, I think Pizzolatti's, one of the key takeaways that Pizzolatti's identifies from Range and Rahimi is that declaratory relief such as sought by Mr. Pizzolatti's and Mr. Range is available to those who have felony convictions. I think pointing to the language about drug trafficking, even nonviolent drug trafficking, being dangerous because it can lead to violence, shows that that's the type of convictions that would permit, and considering the criminal history, those convictions alone, I think, show that this person would show special danger of misusing firearms. You understand, though, that it's just a little strange to have a person who's out totally free in society, right? They've served their time. They had a debt to society. They paid it. And then to say, sorry, sorry, we still think you're dangerous. If you still think a person's dangerous, one of the points of incarceration, of criminal punishment, is to keep society safe and to keep that person still incarcerated or somehow removed from society. But once they've paid that debt, it feels very weird for there to be some additional strings attached. The answer might be sentences with longer periods of supervised release or other conditions that would limit access to Second Amendment rights as part of the sentence itself because that sentence might go on longer. But once the sentence is fully served, like, we wouldn't do this with any other rights, right? We wouldn't say you fully serve your sentence, but you don't have any First Amendment rights. Or you fully serve your sentence, you don't have a Fourth Amendment right. The police can come to your house whenever they want and just rummage through it. Or you can't vote or something along those lines. But yeah, but that voting is a negative right protected by the Constitution. It prevents the stopping of voting on race or gender or age lines. It doesn't. States still determine who can vote. They just can't do it. But we wouldn't take away those rights. And so the Second Amendment is, I guess, different than the first and the fourth in that after you serve your time, you don't get it anymore. Well, I think this court addressed that issue both in range, at least implicitly, and clarified it in Pitsilates where if that was the case, range could have been decided on those grounds alone. And that was not the approach that was adopted by the majority in that case. And I think Pitsilates clarified that the impact of Brahimian range is that at a minimum, they showed that the continued disarmament after the term supervisor release or imprisonment is over, that it's still justified for dangerous felons and those that present a special danger. So I think the court could not have come to that decision if it were to decide that once someone is done with their period of supervisor release or parole, that those rights automatically restore. So in Pitsilates, the court obviously remanded. But if that was the standard it wished to adopt, then it could have adopted that standard directly, and it chose not to. And I think in Moore and Quails, you know, the court did deal with people who were still on supervisor release or parole, but it didn't set the standard or limit the standard to that. So I think, you know, Pitsilates followed those cases and clarified that this continued special danger is continually justified under the Second Amendment and pointing specifically to range and Brahimi. You rely a lot on the statement in Pitsilates that drug dealing sort of has high potential for physical violence, but that was dicta. So what in the record shows that drug dealing is in fact that type of crime? Excuse me, that shows in the record for Mr. Reichenbach? Well, I think Mr. Reichenbach has... Not specific to him, but if we're talking categorically that drug dealing is the type of crime that can be a predicate for disarming someone because it poses a special danger of misuse. A conviction reflects that that person poses a special danger of misuse. What is it about drug dealing and where is that in the record? For instance, your colleague says sentencing commission statistics show drug dealing 30 percent of the time is associated with violence. What can we look at in the record other than a dicta statement in Pitsilates? What is there to support your contention that drug dealing is that type of crime? Well, I think this court has recognized that to be true multiple times, and I think we pointed to in our record some statistics as well about the propensity for drug offenders to reoffend violently. I think the statistic was about 30 percent. I believe it's on page 32 of our brief. I don't have the statistics in front of me. So we pointed to those statistics as well connecting drug crimes, even nonviolent ones, to violence. And I think that supports the reason that the court continually makes that point, albeit in dicta, whether it's in the White case or the Pitsilates case. And it was mentioned multiple times in range about, I believe as well, also in dicta about the connection between drug trafficking. And I just, the Williams case as well, I think makes that point very clear. That was referenced a few times, that I know they, in Williams, Judge Thapar creates the three sort of categories or references three categories with drug trafficking falling in the second one, but does acknowledge for those reasons that it often does lead to violence, as opposed to the crimes that were at issue in, say, range or Pitsilates. I mean, the interesting thing is the Supreme Court in Rahimi did have an individualized determination that Rahimi was going to be dangerous. It was a domestic violence, a domestic violence order. And so the answer was, we've already looked at you, you particularly, and we have an order basically saying that you are dangerous. There's no specific, you know, that dangerousness was the reason for the order, and then that's what put him into a different section of 922. But there's no individual finding as to Mr. Reichenbach's current state of dangerousness right now, is there? There's no convictions in criminal history. That's true. The criminal history, as the court in Pitsilates said, is prior criminal history beyond just his crimes of conviction, which include an assault charge and disorderly conduct charge as well as the drug trafficking. In addition to his post-conviction conduct, which in this case involved illegally obtaining a gun, can all be considered as to whether he poses some special danger of misusing a firearm. That was the case, and there was no restraining order taken out against him. But in Pitsilates, the court established this understanding of Brahemian range at a minimum showing that those who pose a special danger, that disarmament has continued to be justified. And then I think pointing again to the issue of, in cases like Pitsilates, the petitioner there sought to have his firearms restored and the petitioner continues to apply to me. The court obviously thought that there were some factual issues related to whether he continued to pose this danger of, a special danger of disarmament. So if you win, let's say you win, and let's say 30 years pass, and Mr. Reichenbach has lived the model life after that, can he come back and say, you know, forever no, this decision bars him if you win from this court or any court of final disposition, would bar him from owning a gun forever no longer, how long he becomes a model citizen in the future? Well, I think our position in that hypothetical is sort of twofold. I think first of all, based on this court's continued recognition of the fact that drug trafficking leads to violence, that those convictions would justify the possession of a gun. But I understand that Pitsilates does also acknowledge that Mr. Reichenbach would at any point be able to petition to have his gun rights back, as Mr. Pitsilates did, and perhaps could make that case based on individual facts and circumstances, but Mr. Pitsilates has only had a year since he's been released from prison before he went out and obtained a firearm illegally, and then when he was confronted by it, by police, tried to run away and throw the firearm off to the side before he was arrested. So I think at this point, we still believe that his crimes of conviction justify his continued disarmament, but even his individual conduct, I don't think he can meet the standard that the court identified in Pitsilates, even if he would possibly be able to do so at some much later point, like Mr. Reichenbach was able to do so. You also cite in your brief as historic analogs some of the laws disbarring, the intoxicated, or disarming, not disbarring, the intoxicated, the underage, the insane, all temporary, of course, but what, if anything, are we to make of the drug-related, drug-use-related convictions or parole violations or the fact that he had a hypodermic needle in his pocket when he was apprehended with a gun? Well, I think those are important considerations, especially following the court's guidance in Pitsilates that these are things that should be considered when someone, whether or not someone poses a special danger of continued misuse of firearms. So, you know, there is a long record of not only criminal convictions, but parole being revoked for multiple reasons, including drug use. And again, drug paraphernalia being found on the defendant when he was arrested for the incident offense. And I think Pitsilates says specifically that all of that should be considered. Our position, as I said before, was that the convictions themselves are sufficient, but Pitsilates says that all that criminal conduct should be considered. Should it be considered, though? I guess one thing I'm struggling with is if it should be considered, that seems to be, it seems to be a G3 of possessing a firearm while illegally using a substance. So it seems weird to say that the analog is for his post-conviction drug use when his conviction is for, ultimately for just having a conviction, not using. I'm just trying to, there seems to be a tension there. I'm not sure I understand the question. Is it that the drug use itself shouldn't be considered because it's people in charge with it? It just seems like maybe there is a historic analog for disarming someone who is actively using controlled substances per G3, but that's not his offense of conviction, or that's not the statute we're considering the constitutionality of. So there seems to be somewhat of a misalignment of the how and why. It seems like we're supposed to consider the how and why of 922G1, not of his subsequent conduct. Well, I understand that. I think, first of all, to just point to his offenses of conviction for drug trafficking and not drug use is the primary factor that we think continues to justify disarmament. But in the Pizzolatti's case, the court specifically remanded for considerations of conduct surrounding the crimes of conviction. So it was criminal history and offense conduct more broadly than the crimes of conviction. But I understand that this is not a case in which we're justifying historically 922D and use by someone, possession of a gun by someone using drugs, which I think might bring up different considerations. But I think the 922G analysis, which this court identified in Pizzolatti's refers specifically to this special danger of misuse. And in that case, the court acknowledged, at least even if it wasn't dicta, that drug trafficking has the connection to violence. And it has in other cases as well, like the White case. I see my time is up. I'm happy to answer any other questions the court may have. Thank you. Just a couple of quick points. I think Judge Roth and Judge Fitz brought up the voting amendment, the right to vote. And it shows that the founding fathers, when they wanted to take away somebody's Bill of Rights, rights under the Bill of Rights, they knew how to do it. They did that for voting. In other words, felons were allowed, were precluded from voting even after they were released from prison. It says that directly in the Bill of Rights. But the other amendments, as Judge Fitz pointed out, whether it's the first or the second or the fourth, there is no exception. So if somebody is not under any criminal justice supervision, they should get their second amendments right back. And lastly, I just want to point out that in Pitsadilles, in Pitsilides, there was also the problem, the court wasn't sure whether bookmaking and pool selling offenses involved violence or not. So they remanded the case for further fact-finding. And the assessment necessarily required individual factual finding. They couldn't just assume that bookmaking was dangerous. They had to actually look at it. So if this court is going to remand, that would be the purpose for individualized fact-finding to prove that Reichenbach was dangerous during his drug violations. Thank you. Thank you very much. We will take the matter under advisement.